UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BRANDON C. MCINTYRE,

         Plaintiff,

v.

UNITED STATES MARSHAL SERVICE, et al.,

         Defendants.

Civil No. 18-1268 (KM) (MAH)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.**

Brandon C. McIntyre, an inmate at FCI Fort Dix proceeding pro se, brings this action against the U.S. Marshals Service ("USMS") and 17 of its current and former employees[1] (the "Individual Defendants") for constitutional violations pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). DE 90 (second amended complaint). McIntyre's claims arise from the USMS's policy of shackling criminal defendants during pretrial proceedings that occur outside the presence of a jury; he alleges that the policy of shackling pretrial detainees is itself unconstitutional and, further, that the Individual Defendants excessively tightened his restraints, causing him pain and, allegedly, permanent injuries.

The defendants have moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing (1) the USMS is shielded by sovereign immunity; (2) the amended complaint fails to state a claim against the Individual Defendants under *Bivens* and its progeny; (3) most claims are time-barred; and (4) the Individual Defendants are entitled to qualified immunity. DE

---

[1] These defendants are current Deputy U.S. Marshals ("DUSMs") Maggie Barone, Dennis Crennan, Wesley Fitzgerald, Michael Kozyra, Sean Mitchell, Bryan Pasichow, Michelle Rios, and Da'Nay Rogers; former DUSMs Molly English, Brian Gillen, Patrick Higgins, James Lyons, Michael Rotolo, Lissette Sanchez, and Nick Stavrou; and former Supervisory Deputy U.S. Marshals Dan Abel and Jerry Sanseverino.

112-5.

The motion requires me to decide whether McIntyre can assert a claim under *Bivens* arising from the circumstances presented here; i.e., shackling in the courtroom pursuant to a USMS policy that authorizes such measures for courtroom security. I conclude, for the reasons given below, that he cannot. The defendants' motion to dismiss will be granted and the complaint will be dismissed with prejudice.

**I.    BACKGROUND**

   **A.  McIntyre's Criminal Proceedings**[2]

Federal authorities took McIntyre into custody on September 12, 2014. *See United States v. McIntyre*, No. 16-cr-13 (D.N.J.), DE 1 (criminal complaint) at 1-3, DE 6 (order of commitment) at 1.[3] He remained in custody through his trial. *Id.*, DE 19 at 1 (order of detention pending trial). Throughout this period, McIntyre and his counsel wrote several letters to the Court requesting, as relevant here, that he be permitted to appear in court without restraints. *See*, *e.g.*, *id.*, DE 21, 34, 35, 37, 48. For example, in a letter filed July 7, 2017, McIntyre requested "to appear in court unshackled as the 9th Circuit declared it unconstitutional to shackle pre-trial inmates." *Id.*, DE 48 at 9. In another letter, filed September 14, 2017, McIntyre "objected to being handcuffed and shackled at any future court appearances." *Id.*, DE 55 at 1. Relying on

---

[2]    The Court may take judicial notice of McIntyre's criminal proceedings. *See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint."); *O'Boyle v. Braverman*, 337 F. App'x 162, 164 (3d Cir. 2009) (court may properly look at "public records, including judicial proceedings" the authenticity of which are "not subject to reasonable dispute"). This is particularly true here, since I presided over McIntyre's criminal proceedings.

[3]    McIntyre was eventually charged with multiple counts of production of child pornography, interstate extortionate threats, stalking, and online enticement of a minor to engage in criminal sexual conduct. No. 16-cr-13, DE 38 (superseding indictment) at 1-6. In February 2018, a jury found him guilty on all counts (*id.*, DE 117 (jury verdict)) and in July 2019, I sentenced him to 240 months in prison, and a life term of supervised release. *Id.*, DE 147 (minute entry), 148 (judgment).

*United States v. Sanchez-Gomez*, 859 F.3d 649 (9th Cir. 2017),[4] he argued that "a policy of automatically shackling defendants in court rooms" is unconstitutional. No. 16-cr-13, DE 55 at 1. In a letter to the Court filed October 20, 2017, McIntyre's counsel requested that McIntyre "not be handcuffed or shackled while in your courtroom on any occasion." *Id.*, DE 56 at 1. Citing *Sanchez-Gomez*, counsel argued that before imposing restraints, the Court must make an individualized determination that shackling was the least restrictive means to maintain security and order in the courtroom. No. 16-cr-13, DE 56 at 1. At a bail hearing on October 30, 2017, the magistrate judge noted that *Sanchez-Gomez* was not binding, but that, "without reaching the merits of the request, [he] would ask the marshal just for the limited purposes of today's hearing to uncuff Mr. McIntyre." No. 16-cr-13, DE 64 at 3.

In December 2017, McIntyre and his counsel submitted two applications seeking an order directing the USMS to produce him without restraints for all future court appearances. *Id.*, DE 76, 79. On January 12, 2018, I granted counsel's motion "to the extent that hand shackles will be removed during Court appearances." *Id.*, DE 85. I advised that the order was "subject to revision in light of changed circumstances or the Marshals' reassessment of the security situation in the courtroom." *Id.*

---

[4] In *Sanchez-Gomez*, the district court had enacted a districtwide policy permitting the use of full restraints on most in-custody defendants produced for in-court non-jury proceedings. The Ninth Circuit held that the policy was unconstitutional, even though the plaintiffs' criminal proceedings had ended while the appeal was pending. 138 S. Ct. at 1536. The Supreme Court vacated and remanded, finding that the termination of the criminal proceedings mooted the case. *See id*. at 1540–42.

The defendant's letter application(s) did not bring to the Court's attention controlling or potentially relevant Third Circuit case law, such as *Szuchon v. Lehman*, 273 F.3d 299, 314 (3d Cir. 2001). If it had, I would have considered more explicitly on the record such factors as the defendant's pretrial detention as a danger to the community (affirmed, *see* DE 78 at 24 *et seq.*), repeated violent threats against vulnerable young girls (including two trial witnesses), his prior conviction of stalking and surveilling an adult woman, his impersonation of a law enforcement officer to extort his victims, and his generally erratic statements and behavior. All bespeak a compulsive inability to control his behavior. My ruling that defendant be shackled by the legs but not the hands would likely have been the same.

### B. The Complaint

The second amended complaint (DE 90) alleges the following facts, which I accept as true for purposes of the motion to dismiss.

The USMS has a "policy of placing all criminal defendants in full restraints without first having a hearing to determine individual security needs of each defendant." DE 90 at 12–13. McIntyre appeared before the Court in the above-referenced criminal matter on numerous dates between September 2014 and July 2019. DE 90. During his transportation to and from these appearances and during the appearances, various Individual Defendants placed him in full, excessively tight restraints, refused to loosen or remove the restraints, and ignored McIntyre's requests for medical attention.[5] The excessively tight restraints resulted in McIntyre suffering serious permanent injuries, including "scarring, bleeding, excruciating pain, circulation and nerve damage, falling down," and post-traumatic stress disorder. DE 90 at 14–218, 235–44.

Further, defendant Dan Abel, a Supervisory Deputy United States Marshal, knew about the restraint policy and failed to change it "despite being notified numerous times that such policy violates the Constitution." DE 90 at 12–13. McIntyre wrote several letters to Abel between September 2014 and June 2019 regarding this policy, the excessively tight restraints, and his resulting injuries. DE 90 at 220–35. McIntyre's mother also left multiple voicemails for Abel. DE 90 at 223–31. Abel never responded to McIntyre or his mother. DE 90 at 224–31.

---

[5] *See* DE 90 at 14–19 (9/11/2014), 20–31 (1/19/16), 31–47 (2/24/16), 47–64 (10/4/2016), 64–75 (4/12/2017), 75–85 (7/7/2017), 85–97 (10/27/2017), 97–109 (10/30/2017), 109–34 (11/13/2017), 134–40 (2/9/2018), 140–44 (2/20/2018–2/28/2018 trial dates), 144–59 (2/20/2018), 159–73, (2/21/2018), 174–77 (2/22/2018), 177–88 (2/23/2018), 188–97 (2/26/2018), 197–206 (2/27/2018), 206–11 (2/28/2018), 211–20 (7/26/2019).

### C. Procedural History

McIntyre initiated this action in January 2018 against the USMS and Abel, alleging that the restraint policy and excessively tight shackles violated his due process and Eighth Amendment rights. DE 1 at 9. After numerous requests for permission, extensions, a first amended complaint, and a prior motion to dismiss (DE 25, 34, 43, 52, 64, 68, 75, 78, 84, 88), in March 2022 McIntyre filed his second amended—and currently operative—complaint against the USMS and Individual Defendants. DE 90. It alleges that the defendants violated his Fifth Amendment rights by (1) adopting the restraint policy, (2) subjecting him to excessively tight restraints during his transport to and from criminal proceedings and during court appearances, (3) refusing to remove his restraints for court appearances, and (4) failing to obtain medical care for injuries allegedly caused by the restraints and by otherwise failing to address his complaints. DE 90. McIntyre seeks $5,250,000 in damages. DE 90 at 239–40. The defendants moved to dismiss in August 2022. DE 112.[6]

## II.   DISCUSSION

### A. Claims Against USMS

As an initial matter, the defendants argue, and the Court finds, that McIntyre's claims against the USMS itself must be dismissed for lack of subject matter jurisdiction because the

---

[6] McIntyre did not oppose the motion, despite being given ample opportunity to do so. In November 2022, after he had already missed the deadline to respond, I ordered him to file his opposition, if any, by December 8, 2022. DE 114. He did not file an opposition. Instead, by letter dated December 5, 2022, he requested another copy of the defendants' motion papers, stating that correctional officers had seized his copy. DE 115. I then directed the defendants to serve another copy of the motion papers on McIntyre and directed McIntyre to file his opposition, if any, by February 10, 2023. DE 116. The defendants provided a certificate of service indicating that in accordance with the Court's order they served an additional copy of motion papers on McIntyre at his address of record on January 3, 2023. The Court observes that the address that the defendants used at FCI Ft. Dix appears to still be his current detention facility.  *See* https://www.bop.gov/inmateloc/  (search for 66881-050, last searched March 9, 2023). McIntyre has still not opposed the motion, and the Court thus decides it without the benefit of his input.

USMS, as a federal agency, is entitled to sovereign immunity. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction[.]"). "Neither the United States nor its agencies have waived sovereign immunity for constitutional claims." *Mierzwa v. United States*, 282 F. App'x 973, 976–77 (3d Cir. 2008) (citing *United States v. Testan*, 424 U.S. 392, 400–02 (1976)). The USMS, as a component of a federal agency (the Department of Justice), is thus immune from suit. *See*, *e.g.*, *Mierzwa*, 282 F. App'x at 976 ("To the extent that the Mierzwas' claim can be construed as a claim under *Bivens* . . ., it cannot be maintained because a plaintiff may not use *Bivens* to pursue constitutional claims against the United States or its agencies.").[7] Accordingly, I will dismiss McIntyre's claims against the USMS with prejudice.

### B. Claims Against Individual Defendants

McIntyre's remaining claims against the Individual Defendants—that they violated his Fifth Amendment rights by adopting the alleged unconstitutional restraint policy, subjecting him to excessively tight restraints, refusing to remove his restraints for court appearances, and by failing to obtain medical care for injuries allegedly caused by the restraints or otherwise address

---

[7] *See also, e.g.*, *Gary v. Gardner*, 445 F. App'x 466–67 (3d Cir. 2011) ("the United States Marshals Service is entitled to sovereign immunity from suit" absent an explicit waiver of sovereign immunity); *Muhammad v. U.S. Marshals Serv.*, 385 F. App'x 70, 73 (3d Cir. 2010) (affirming dismissal of "the U.S. Marshals Service's motion to dismiss on sovereign immunity grounds, as no waiver of the agency's absolute immunity from suit was present"); *Shannon v. U.S. Parole Comm'n,* 1998 WL 557584, at *3 (S.D.N.Y. Sept. 2, 1998) (*Bivens* claims may not be maintained against federal agencies).

his complaints—must arise, if at all, under *Bivens* and its progeny. A discussion of the current state of the law is required to put these claims in context.[8]

"[I]n the 100 years leading up to *Bivens,* Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). "In *Bivens*, the Court held that it had authority to create a cause of action under the Fourth Amendment against federal agents who allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations." *Egbert v. Boule*, 142 S. Ct. 1793, 1802 (2022) (quotations omitted). "Over the following decade, the Court twice again fashioned new causes of action under the Constitution— first, for a former congressional staffer's Fifth Amendment sex-discrimination claim, *see Davis v. Passman*, 442 U.S. 228 (1979); and second, for a federal prisoner's inadequate-care claim under the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14 (1980)." *Egbert*, 142 S. Ct. at 1802.

In the decades after *Carlson*, which was decided in 1980, the Supreme Court has never implied an additional cause of action under the Constitution. *See Egbert*, 142 S. Ct. at 1797 (the Supreme Court has "declined 11 times to imply a similar cause of action for other alleged constitutional violations") (citations omitted). "Rather than dispense with *Bivens*," however, the Court gone no farther than to "emphasize that recognizing a *Bivens* cause of action is 'a disfavored judicial activity.'" *Egbert*, 142 S. Ct. at 1797 (quoting *Ziglar*, 137 S. Ct. at 1856–57); *see also Mack v. Yost*, 968 F.3d 311, 317 (3d Cir. 2020). Indeed, the Court has "disfavore" such

---

[8] I consider McIntyre's *Bivens* claims under Fed. R. Civ. P. 12(b)(6); that is, I consider whether he has stated a claim upon which relief can be granted under *Bivens* and its progeny. I thus assume, as noted above, that his plausible factual allegations are true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted), and give him the benefit of liberal construction and less stringent standards because he is proceeding pro se. *See Haines v. Kerner*, 404 U.S. 519 (1972).

causes of action to the extent of declaring that if it "were called to decide *Bivens* today, [it] would decline to discover any implied causes of action in the Constitution." *Egbert*, 142 S. Ct. at 1809; *see also Tate v. Harmon*, 54 F.4th 839, 843–44 (4th Cir. 2022) ("[I]n the 42 years following *Carlson*, . . . the Court has 'consistently rebuffed' every request . . . to find implied causes of action against federal officials for money damages under the Constitution. And in the last 5 years in particular, it has handed down a trilogy of opinions not only expressing regret over its *Bivens* cases but also demonstrating hostility to any expansion of them.") (quoting *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020)).

After *Ziglar* and *Egbert*, the analysis of a proposed *Bivens* claim must proceed in two steps: First, I must determine whether the claims present a new *Bivens* context; if they do not, the claims may proceed, but if they do, I must then determine whether "special factors" nonetheless "indicate that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 142 S. Ct. at 1803 (cleaned up). These two steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.* at 1803; *see also id.* at 1809 ("a plaintiff cannot justify a *Bivens* extension based on parallel circumstances with *Bivens*, *Passman*, or *Carlson* unless he also satisfies the analytic framework prescribed by the last four decades of intervening case law") (quotations omitted).

### 1. New Context

As to the first step—whether the case presents a new context—if McIntyre's case is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court, then the context is new." *Ziglar*, 137 S. Ct. 1843, 1859; *see also Mack*, 968 F.3d at 319. What counts

as a "new" context is construed very broadly. That is, a case might be held to "meaningfully" differ from claims previously recognized for any number of reasons, including

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 137 S. Ct. at 1859–60. The Supreme Court's "understanding of a 'new context' is broad," *Hernandez*, 140 S. Ct. at 743, and "[e]ven a modest extension" of *Bivens* "is still an extension." *Ziglar*, 137 S. Ct. at 1864.

Applying these principles here, I find that this case involves facts materially different from those in *Bivens*, *Davis*, and *Carlson*; accordingly, it presents a new *Bivens* context. Most fundamentally, because he was a pretrial federal detainee during the relevant time, McIntyre's claims against the Individual Defendants arise under the Due Process Clause of the Fifth Amendment. *See Farmer v. Lanigan*, No. 12-5716, 2016 WL 4107693, at *3 (D.N.J. Aug. 1, 2016) ("an inmate awaiting sentencing must look to either the Fifth Amendment's or the Fourteenth Amendment's Due Process Clause for protection") (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)); *Kost v. Kozakiewicz*, 1 F.3d 176, 188 (3d Cir. 1993) ("Pretrial detainees are not within the ambit of the Eighth Amendment but are entitled to the protections of the Due Process clause."). Neither *Bivens* itself, which arose under the Fourth Amendment, nor *Carlson*, which arose under the Eight Amendmenth, recognized a cause of action for money damages under the Fifth Amendment. Neither provides precedent for recognition of McIntyre's Fifth Amendment claims.

The remaining member of the trilogy, *Davis v. Passman*, did arise under the Fifth Amendment. *Passman*, 442 U.S. at 236. However, the facts there, involving gender

9

discrimination,[9] could hardly be more different from the circumstances here, involving courtroom security. "A common constitutional basis," in the sense of citing the same amendment, "is simply not enough to link a new *Bivens* theory to an existing *Bivens* context." *Landis v. Moyer*, No. 19-470, 2022 WL 2677472, at *6 (M.D. Pa. July 11, 2022); *see also Hernandez*, 140 S. Ct. at 743 (courts must "look beyond the constitutional provisions invoked"). In short, the parties, the setting, the factual allegations, and the claims look nothing alike; McIntyre's case is thus meaningfully different from *Passman*. *See Smith v. Garcia*, No. 21-578, 2022 WL 17852393, at *5 (E.D.N.Y. Dec. 22, 2022) ("[a]lthough both the present case and *Bivens* pertain to alleged violations of the Fourth Amendment by an officer's use of excessive force, the specific contexts of these two alleged constitutional violations are widely divergent, and the . . . bar for finding a new *Bivens* context is low"). For these reasons, this case is meaningfully different from *Passman*.

This conclusion does not break new ground, as numerous courts have concluded that claims arising from alleged excessive force by Deputy U.S. Marshals are meaningfully different from *Bivens*, *Passman*, and *Carlson*. *See, e.g.*, *Dean v. Robinson*, No. 15-06239, 2023 WL 2028720, at *8 (W.D.N.Y. Feb. 16, 2023) (finding that the "context is undeniably a new one" where pretrial detainee brought Fifth Amendment claim for deliberate indifference against two DUSMs); *Hammond v. Two Unknown Named Agents of U.S. Marshals Serv.*, No. 20-4298, 2023 WL 2025206, at *4 (D.S.C. Jan. 9, 2023) (finding that "[e]xcessive force claims between

---

9   Specifically, the plaintiff, Shirley Davis, sued her former employer, United States Congressman Otto Passman, alleging gender discrimination because Passman had written to her stating that although she was "able, energetic, and a very hard worker," he was nonetheless terminating her employment because "it was essential that the understudy to my Administrative Assistant be a man." 442 U.S. at 230. Davis could not sue under Title VII because Congress had "failed to extend [the] protection" of that statute "to congressional employees such as [Davis] who are not in the competitive service," thus she asserted constitutional claims under the Fifth Amendment's Due Process Clause. *Passman*, 442 U.S. at 247.

[DUSMs] and pre-trial detainees" involve "facts that are materially different from those addressed in *Bivens*, *Davis*, and *Carlson*"), *report and recommendation adopted*, 2023 WL 2025171 (D.S.C. Feb. 15, 2023); *Logsdon v. U.S. Marshal Serv.*, No. 21-253, 2023 WL 205052, at *3 (E.D. Okla. Jan. 13, 2023) (new context where "the officers here were employed by the [USMS], not the Bureau of Narcotics [or its successor agency]"); *Lewis v. Westfield*, No. 16-1057, 2022 WL 16924177, at *3 (E.D.N.Y. Nov. 14, 2022) ("Plaintiff's excessive-force and failure-to-intervene claims present a new *Bivens* context" where "[t]he defendants are [DUSMs], rather than federal narcotics agents."); *Edwards v. Gizzi*, No. 20-7371, 2022 WL 309393, at *7 (S.D.N.Y. Feb. 2, 2022) (claims against [DUSMs] presented new context because "the officers involved in *Bivens* were federal narcotics agents" and therefore part of "an investigatory and enforcement force," rather than members of the USMS).

In short, while *Bivens*, like this case, involved allegations of wrongful handcuffing, and *Carlson*, like this case, involved allegations of deliberate indifference to medical needs, and *Passman*, like this case, involved the Fifth Amendment, none of these is parallel to this case. None involved pretrial detainees, transportation and court-appearance settings, courtroom security, allegations of similar Fifth Amendment violations, alleged wrongful conduct by USMS employees, or USMS policy. These distinctions are more than sufficient to support a finding that all three of these prior cases are meaningfully different from this case. *See Egbert*, 142 S. Ct. at 1805 (even "almost parallel circumstances . . . are not enough"); *Landis*, 2022 WL 2677472, at *5 ("superficial similarities are insufficient to justify creating a *Bivens* remedy") (quotations omitted).

    **2. Special Factors Analysis**

Having found that McIntyre's claims present a new *Bivens* context, I do on to consider whether special factors counsel hesitation in extending *Bivens*. *See Egbert*, 142 S. Ct. at 1803. There is no single "exhaustive list of factors that may provide a reason not to extend *Bivens*"; however, separation of powers principles are "central" to the analysis. *Hernandez*, 140 S. Ct. at 743. The inquiry is "whether there is any reason to think that judicial intrusion into a given field might be harmful or inappropriate." *Egbert*, 142 S. Ct. at 1798 (citation and quotation marks omitted). If "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy, the courts must refrain from creating it" and thereby usurping Congress's role. *Id.* at 1803 (cleaned up; quoting *Ziglar*, 137 S. Ct. at 1858). "[E]ven a single sound reason to defer to Congress is enough to require a court to refrain from creating such a remedy*.*" *Id*. at 1803 (cleaned up).

Applying these principles, and mindful that recognizing new *Bivens* causes of action is "disfavored judicial activity," *id.* at 1797, I am constrained to conclude that special factors counsel hesitation; there is at least one reason to believe that Congress is better equipped than the courts to determine the contours of a damages remedy in this contrext. *See Senatus v. Lopez*, No. 20-CV-60818, 2022 WL 16964153, at *5–6 (S.D. Fla. Oct. 12, 2022) (opining that "a court will conceivably always be able to" clear "this low hurdle" of finding "'even one' reason to believe Congress would be better equipped to create a damages remedy than the judiciary"), *report and recommendation adopted*, 2022 WL 16961323 (S.D. Fla. Nov. 16, 2022).

The "primary role and mission" of the USMS is to "provide for the security and to obey, execute, and enforce all orders of" the federal judiciary, including "the United States District Courts." 28 U.S.C. § 566(a); *see also id.* (e)(1)(A) (USMS authorized to "provide for the personal protection of Federal jurists, court officers, witnesses, and other threatened persons in

12

the interests of justice where criminal intimidation impedes on the functioning of the judicial process"). Implying a damages remedy here has the potential to negatively impact the judgment calls DUSMs must make to implement their mission to provide for the security of the federal judiciary, other court personnel, and trial participants. Such a remedy may, for example, impair the Marshals' functions by causing them to second-guess the split-second decisions they must often make.

   Further, as the Supreme Court explained in *Ziglar*, there are other reasons to find that implying a damages remedy presents questions better fit for Congress to address:

> It is true that, if equitable remedies prove insufficient, a damages remedy might be necessary to redress past harm and deter future violations. Yet the decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide. Those matters include the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal system are used to bring about the proper formulation and implementation of public policies. These and other considerations may make it less probable that Congress would want the Judiciary to entertain a damages suit in a given case.

137 S. Ct. at 1858; *see also Hammond*, 2023 WL 2025206, at *4 (determining, in case asserting Fifth Amendment claims against DUSMs, that "[p]otential liability for how pre-trial detainees are handled is a matter best left to Congress."); *Robinson v. Heinze*, No. 18-131, 2023 WL 1774998, at *6 (N.D. Ga. Feb. 3, 2023) ("recognizing a cause of action against U.S. Marshals might have consequences far beyond the boundaries of this case"); *Logsdon*, 2023 WL 205052, at *4 ("courts are 'not undoubtedly better positioned than Congress to create a damages action' for claims against a new category of defendants such as [DUSMs]") (quoting *Egbert*, 142 S. Ct. at 1803); *Senatus v. Lopez*, No. 20-60818, 2022 WL 16964153, at *5–6 (S.D. Fla. Oct. 12, 2022) (while "courts and jurists have often made judgment calls about the use of force in cases brought pursuant to 42 U.S.C. § 1983," "[w]ithout doubt, . . . numerous other implications . . . can be

13

raised which could at least arguably counsel judicial restraint" in case involving excessive force claims against DUSMs).

The availability of an alternative remedial structure may also counsel against extending *Bivens* liability. "The Supreme Court in [*Ziglar*] intimated, and in [*Egbert*] confirmed, that a court may not create a *Bivens* remedy 'if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure.'" *Smith*, 2022 WL 17852393, at *4 (quoting *Egbert*, 142 S. Ct. at 1804). "Alternative remedial structures can take many forms, including administrative, statutory, equitable, and state law remedies." *Nyanteng v. Thompson*, No. 21-10390, 2022 WL 2763552, at *6 (D.N.J. July 15, 2022) (cleaned up; quoting *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018)). An alternative remedial structure, "like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Egbert*, 142 S. Ct. at 1804. "It does not matter if those existing remedial structures 'do not provide complete relief' or are 'not as effective as an individual damages remedy.'" *Cohen v. United States*, No. 21-10774, 2022 WL 16925984, at *7 (S.D.N.Y. Nov. 14, 2022) (quoting *Egbert*, 142 S. Ct. at 1804); *see also Ziglar*, 137 S. Ct. at 1863 ("when alternative methods of relief are available, a *Bivens* remedy usually is not").

Here, as the defendants argue and as numerous courts have recognized, alternative remedial schemes are available. As one court has explained,

> The Director of the Marshals Service is statutorily obligated to "supervise and direct the United States Marshals Service in the performance of its duties." 28 U.S.C. § 561(g). And by regulation, the Director "shall" investigate "alleged improper conduct on the part of U.S. Marshals Service personnel." 28 C.F.R. § 0.111(n). Anyone aggrieved by a Deputy Marshal's conduct may file a grievance alleging improper conduct. *Ibid.* A complaint form for doing so is available on the website of the Marshals Service. . . . In addition, by statute, the Attorney General is required to ensure that "any component" of the Department that receives a "nonfrivolous allegation of criminal wrongdoing or administrative misconduct by an employee of the Department of Justice . . . shall report that information to the

14

> Inspector General." 5 U.S.C. App. 3 § 8E(d). Congress has also authorized the Department's Inspector General to "investigate allegations of criminal wrongdoing or administrative misconduct by an employee of the Department of Justice," "refer such allegations to the Office of Professional Responsibility," or refer them to "the internal affairs office of the appropriate component" of the Department, including the USMS. *Id.* § 8E(b)(2). The Department's Inspector General provides a link on its website through which any person may report allegations of wrongdoing. *See* Hotline, https://oig.justice.gov/hotline (last visited [March 7, 2023]).

*Lewis*, 2022 WL 16924177, at *4.[10] Remedial schemes of this sort, whether or not they wholly satisfy a particular claimant, "foreclose a *Bivens* action," because, as *Egbert* made clear, "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." 142 S. Ct. at 1806-07.

In addition to the above, McIntyre could have, and did, apply to the Court to allow him to appear in court without restraints. *See* DE 112-4 at 69 n.1 (Order, *United States v. Way*, No. 17-cr-40005 (S.D. Ill.) (citing USMS Policy Directive § 9.18: "Courtroom: All prisoners produced

---

[10] *See also Logsdon*, 2023 WL 205052, at *4 (same); *Robinson*, 2023 WL 1774998, at *7 ("[T]he [USMS] has oversight procedures as a measure against unconstitutional conduct. As in *Egbert* with the U.S. Border Patrol, the [USMS] is statutorily obligated to investigate 'alleged improper conduct on the part of U.S. Marshals Service personnel.' 28 C.F.R. § 0.111(n). Because the focus of this inquiry 'is whether the Government has put in place safeguards to prevent constitutional violations from recurring,' not whether 'a given remedy is adequate,' the Court finds that this remedial process 'is sufficient' to secure deterrence from unconstitutional behavior.") (quoting *Egbert*, 142 S. Ct. at 1806–07); *Goodale v. Seguin*, No. 22-00031, 2022 WL 17084400, at *5 (W.D. Tex. Nov. 17, 2022) ("Congress has sufficiently acted in this area, creating alternative remedies to address allegations of wrongdoing by United States Marshals, and thereby limiting the appropriateness of judicial action in finding an implied *Bivens* remedy here."); *Senatus*, 2022 WL 16964153, at *5 (S.D. Fla. Oct. 12, 2022) ("The *Egbert* Court has made clear that *Bivens* does not provide Senatus with a remedy for Defendants' alleged egregious conduct. Instead, Congress has created a remedial structure in which the U.S. Marshals are to conduct their own investigation into purported abuse by those acting on its behalf. Consequently, this Court cannot extend *Bivens* to the instant case."), *report and recommendation adopted*, 2022 WL 16961323 (S.D. Fla. Nov. 16, 2022); *Cienciva v. Brozowski*, No. 20-2045, 2022 WL 2791752, at *10–11 (M.D. Pa. July 15, 2022) ("an alternative available remedy exists for Cienciva within the legal mandates of the [USMS], in much the same way the Court concluded one existed for Boule. . . . That our own independent consideration of the adequacy of such an investigation or process may question its deterrent effects is of no moment; the *Egbert* decision admonishes us not to graft a judicial remedy onto an existing grievance process that "independently foreclose[s]" a *Bivens* cause of action.") (quoting *Egbert*, 142 S. Ct. at 1806).

for court, with the exception of a jury trial, are to be fully restrained *unless otherwise directed by a United States District Judge or United States Magistrate Judge*.") (emphasis added). McIntyre obtained some relief to the extent that he was permitted to appear without handcuffs. 16-cr-13, DE 64, 85. He could have also pursued injunctive relief to change USMS policy. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) ("[U]nlike the *Bivens* remedy, which we have never considered a proper vehicle for altering an entity's policy, injunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally."). IN an extreme case, if the violation were clear, mandamus relief might be available.

Finally, the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 et seq. ("FTCA"), which is "the exclusive remedy for most claims against Government employees arising out of their official conduct," *Hui v. Castaneda*, 559 U. S. 799, 806 (2010), is another alternative remedial structure that would counsel against implying a damages remedy here. *See Laoye v. United States*, No. 14-5195, 2023 WL 2263670, at *8 (D.N.J. Feb. 28, 2023) ("It is also worth noting that Plaintiff has other avenues to pursue his rights, indeed, he has filed this FTCA action against the United States which remains pending in this Court. Thus, Plaintiff has alternative remedy structures available and has in fact done so."); *Morales v. Cnty. of Camden*, No. 21-11961, 2022 WL 671369, at *4 (D.N.J. Mar. 7, 2022) ("Plaintiff clearly could have brought her [Fourth Amendment claims against DUSMs] under the FTCA."); *Robinson*, 2023 WL 1774998, at *8 ("Whether the FTCA foreclosed *Bivens* claims was initially unclear. However, [after *Ziglar*], more courts have found that—if nothing else—the application of the FTCA is an additional reason against applying a *Bivens* claim in certain cases."); *Edwards*, 2022 WL 309393, at *9 (collecting cases holding that the FTCA qualifies as an alternative remedy to *Bivens*).

16

In short, because at least one special factor, and probably more, counsel against extending *Bivens* to the present context, *Bivens* does not provide an implied civil damages action for McIntyre's claims against the Individual Defendants. Accordingly, I will dismiss McIntyre's claims against the Individual Defendants with prejudice.

Because McIntyre's claims are not viable under *Bivens*, I do not address the defendants' alternative arguments as to qualified immunity and the statute of limitations. *See Bistrian v. Levi*, 912 F.3d 79, 96 n.25 (3d Cir. 2018) ("Because we conclude that [there is] not a recognized *Bivens* remedy, we again need not address whether any of the defendants are entitled to qualified immunity."); *Laoye*, 2023 WL 2263670, at *8 (unnecessary to address qualified immunity "given that *Bivens* is not being extended" to the claims at issue); *Barry v. Zamar*, No. 19-10216, 2022 WL 4774398, at *8 (D.N.J. Oct. 3, 2022) ("Because the Court has concluded that Barry does not have a viable *Bivens* claim . . . , the Court need not address whether ICE Officer Zamar is entitled to qualified immunity here.").

I note that the result here may seem inconsistent, in that a federal pretrial detainee is barred from assert a *Bivens* damages claim premised on shackling or other restraints, whereas a similarly situated state detainee could at least in some circumstances pursue that claim under 42 U.S.C. § 1983. *See, e.g.*, *Kopec v. Tate*, 361 F.3d 772 (3d Cir. 2004) (concluding that plaintiff stated claim under § 1983 premised on excessively tight handcuffs when he alleged that he was "groaning in excruciating pain" and had "permanent nerve damage . . . for which a hand surgeon treated him for over one year"). But there is no legal anomaly. Such perceived inconsistencies are inevitable because, under *Ziglar* and *Egbert*, the *Bivens* remedy against the federal government is far narrower than the § 1983 remedy against the states. A federal damages remedy for such conduct if there is to be one, must be created by Congress, not the courts.

17

### III. CONCLUSION

For the reasons stated above, I will grant the defendants' motion to dismiss McIntyre's second amended complaint and dismiss the claims against all defendants with prejudice. DE 112 (motion to dismiss); DE 90 (second amended complaint). I will not grant McIntyre leave to file a third amended complaint because I have already granted him multiple opportunities to amend, and the unavailability of a *Bivens* remedy is a legal impediment that cannot be cured by amendment; thus, further amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (leave to amend need not be granted if amendment would be futile).

An appropriate order follows.

DATED: March 9, 2023

/s/ Kevin McNulty
_____
KEVIN MCNULTY
United States District Judge